FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

2012 OCT 17 PH 12: 53

SOUTHERN DISTRICT
OF INDIANA
LAURA A. BRIGGS
CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| JOSHUA N. BOWSER, | ) | CAUSE NO. 1:12-cr- | -01 |
| MICHAEL A. KNOLL, | ) | | -02 |
| KENT D. WHITINGER, | ) | | -03 |
| a/k/a Flush, | ) | | |
| MICHAEL E. HAMILTON, | ) | **1:12 -cr- 0102 TWP -MJD** | -04 |
| a/k/a Bone, | ) | | |
| JAMES W. BAIN, | ) | | -05 |
| a/k/a Festus, | ) | | |
| EDWARD J. BOLEN, | ) | | -06 |
| a/k/a Special Ed, | ) | | |
| DOMINIC R. MANGINE, | ) | | -07 |
| MICHAEL MEDLIN, | ) | | -08 |
| a/k/a Grandpa, | ) | | |
| MICHAEL A. SCHLICHER, | ) | | -09 |
| a/k/a Brisco, | ) | | |
| JAMIE A. BOLINGER, | ) | | -10 |
| a/k/a Jammer, | ) | | |
| STEPHEN M. WHITINGER, | ) | | -11 |
| VANCE CANNER, | ) | | -12 |
| LAWRENCE GREGORY, | ) | | -13 |
| a/k/a Scary Larry, | ) | | |
| BRYAN E. GLAZE, | ) | | -14 |
| a/k/a Junior, | ) | | |
| STEPHEN D. DUFF, | ) | | -15 |
| a/k/a Taser, | ) | | |
| RICHARD C. DeMARCO, JR., | ) | | -16 |
| STEVE A. REYNOLDS, | ) | | -17 |
| MARK A. BISEL, | ) | | -18 |
| a/k/a Taz, | ) | | |
| JOSEPH ALARCON, | ) | | -19 |
| a/k/a Spider, | ) | | |
| CHARLES N. ERNSTES, II, | ) | | -20 |
| DAVID L. WHITINGER, | ) | | -21 |
| JOSEPH MAIO, | ) | | -22 |
| RONALD P. TAYLOR, JR., | ) | | -23 |
| PAMELA K. CUMMINS, | ) | | -24 |
| JOSE DIAZ, | ) | | -25 |
| RIGO ROCHA-LOPEZ, | ) | | -26 |

| | | |
|---|---|---|
| JUSTO ROJAS, | ) | -27 |
| CARLOS MENA, | ) | -28 |
|     a/k/a Charlie, · | ) | |
| HECTOR NAVA-ARREDONDO, | ) | -29 |
|     a/k/a Oscar, | ) | |
| JORGE DANIEL LEDEZMA-CRUZ, | ) | -30 |
|     a/k/a Daniel, | ) | |
| JORGE SEDENO-CALLEJAS, | ) | -31 |
| CESAR GRANADOS, | ) | -32 |
| JAMES STONEBRAKER, | ) | -33 |
|     a/k/a Stoney, | ) | |
| BRIAN T. PEACOCK, | ) | -34 |
| NORVEL TERRY, | ) | -35 |
|     a/k/a Nasty, | ) | |
| RUSSELL PRYOR, | ) | -36 |
|     a/k/a Gabby | ) | |
| THOMAS SWAN, | ) | -37 |
|     a/k/a T.J., | ) | |
| STEVEN LECCLIER, | ) | -38 |
|     a/k/a Snoopy, | ) | |
| ANTHONY LEACH, | ) | -39 |
| WILLIAM ANDERSON, | ) | -40 |
| TERRELL ADAMS, | ) | -41 |
| SCHARME L. BOLINGER, | ) | -42 |
| DAX G. SHEPHARD, | ) | -43 |
| CHRISTIAN J. MILLER, | ) | -44 |
| a/k/a Millhouse, | ) | |
| TOMMY SIMS, | ) | -45 |
| ABRAHAM FLORES, | ) | -46 |
|     a/k/a Abraham Medina, | ) | |
| THOMAS A. GRIFFIN, JR., | ) | -47 |
|     a/k/a Little Tony, | ) | |
| FRANK JORDAN, | ) | -48 |
| THOMAS A. GRIFFIN, SR., | ) | -49 |
|     a/k/a Tony, | ) | |
| ROBERT ROBERTS, and | ) | -50 |
| ROBERT MUEHLHAUSEN, | ) | -51 |
| a/k/a Mule, | ) | |
| | ) | |
|     Defendants, | ) | |

## SUPERSEDING INDICTMENT

## COUNT ONE

### [Racketeer Influenced and Corrupt Organizations - 18 U.S.C. § 1962(c)]

The Grand Jury charges that:

### Introduction

1.     The Outlaws Motorcycle Club ("OMC"), also known as the American Outlaw Association, is an international organization consisting of national, regional, and local units.  The OMC is a criminal organization whose members and associates engaged in criminal acts, including the use and distribution of controlled substances, the use and threatened use of violence, extortion, firearms violations, obstruction of justice, illegal gambling, and insurance fraud.

2.     **Structure and Hierarchy of the OMC**

a.     The most local unit is the chapter.  All members of the OMC belong to a specific chapter and answer to the officers of that chapter.  Each chapter has a president, vice-president, treasurer, and enforcer.  The OMC maintained chapters in Indianapolis, Indiana and Fort Wayne, Indiana.

b.     The various OMC chapters are grouped into regions with color-coded names. The Indianapolis and Fort Wayne chapters of the OMC belonged to the OMC's "Black Region."

c.     The various regions of the OMC respond to a national leadership body.  The OMC's national leadership body coordinates the activities of the various regions of the OMC.

3.     **OMC's Membership Requirements and Procedures** – OMC members must be over the age of twenty-one and possess a Harley Davidson motorcycle or another American-made motorcycle.  Probationary or prospective members ("probates") are brought into chapters

Case 1:12-cr-00182-TWP-KMB-SEALED Doc #: 1-1 Filed: 10/25/12 1 of 84 PageID #: 5
Case 3:12-mj-07083-VKA Doc #: 1-1 Filed: 10/25/12 1 of 84 PageID #: 5
Document 670-2 Filed 10/17/12 Page 4 of 84 PageID #: 2043

through a lengthy, phased process designed to measure a potential member's commitment to the OMC and to guard against law enforcement infiltration. After associating with the OMC for a period of time, an individual may be identified as a "Hangaround" and may perform menial tasks and other duties to gain the respect of the members. After one year, a Hangaround may be sponsored by an OMC member and become a probate (also known as a prospect) for that chapter. A probate must follow orders and directives from full-patch wearing members, including orders and directives to engage in criminal activity. After a minimum of six months, a probate may become a full member of the OMC upon the unanimous vote of the OMC chapter's members. The OMC maintained national by-laws, or rules, by which members would have to "answer to the local chapter or regional officers to the extent of expulsion from the club."

    **4.**    **Representation of OMC Membership**

    a.    Members of the OMC are "patched" as a formal method of identifying themselves and their level of participation in the OMC. The vestments denoting membership in the OMC, referred to as "colors," include a leather or denim vest with a back patch depicting the club emblem, a skull and crossed pistons known as "Charlie." The emblem is surrounded with a top "rocker" bearing the word "Outlaws" and a bottom "rocker" identifying the city where the chapter is claiming territory. The vests also display other symbols such as "MC" (motorcycle club), "A.O.A." (American Outlaws Association), and "1%er." The "1%er" designation was in response to a proclamation issued in the 1940s by the American Motorcycle Association that ninety-nine percent of persons in motorcycle clubs were law-abiding citizens. The "1%er" patch signifies that the OMC members are in the other one-percent; that is, not a law-abiding citizen. It is a badge of honor for the OMC member.

4

b.      The OMC maintain rules regarding the wearing of OMC-related tattoos. After one year as a full-patched member of the OMC, the members can wear a club tattoo. After five years as a full-patched member of the OMC, the members can wear "back patch" tattoos, which consist of a skull and crossed pistons ("Charlie") across the member's back.

c.      OMC members also display other patches and tattoos on their person, their motorcycles, and on other clothing, including the "Snitches Are A Dying Breed" patch, signifying the OMC's commitment to expel and, if necessary, murder individuals who cooperate with law enforcement, and the "GFOD" patch, which stands for "God Forgives, Outlaws Don't," and references a revenge philosophy of the OMC.

d.      OMC probates wear vests displaying patches identifying their status and affiliation with the OMC.

e.      The OMC require individuals to return their colors if they cease to become active members of the OMC. The OMC also require former members to color over tattoos that represented their membership in the OMC.

**5.      Funding the OMC's Operation Through Dues, Taxes, and Gambling Devices**

OMC members, probates, and members of support clubs are required to pay dues on a monthly basis. A portion of these dues are forwarded by the treasurer of the local chapter to a regional level treasurer, who then forwards a portion of the dues to the national leadership. Taxes are assessed on individual members at various times, with the proceeds also being funneled up the OMC's chain to the national leadership. The dues and taxes help fund the continued operation of the OMC and are used for a variety of purposes, including the payment of expenses to the regional and national leadership, covering funeral expenses of members, contributing to a legal

defense fund for members, and paying costs associated with planned trips or "runs." Proceeds from illegal gambling activities also help fund the continued operation of the OMC.

6. **Association With Support Motorcycle Clubs** – The OMC maintains alliances with other local motorcycle clubs, known as "support clubs," who conduct criminal activities in support of the OMC and serve as a source for new membership. The support clubs who assisted the OMC included the Black Pistons Motorcycle Club and the Stone Drifters Motorcycle Club.

7. **OMC's Rules of Conduct and Punishment** – The OMC members, probates, and hangarounds follow rules and codes of conduct, both written and unwritten. The OMC maintained written national by-laws that members of the OMC were required to follow. If a member of the OMC violated the rules and by-laws, they would "answer to the local chapter or regional officers to the extent of expulsion from the club."

8. **Criminal Conduct** – At all times relevant to this Indictment, members of the OMC engaged in criminal activity including the use and distribution of controlled substances, the use and threatened use of violence, extortion, firearms violations, obstruction of justice, illegal gambling, and insurance fraud.

9. During some or all of the time period specified in this Indictment, the following defendants were members or associates of the OMC: JOSHUA N. BOWSER, MICHAEL A. KNOLL, KENT D. WHITINGER, a/k/a Flush, MICHAEL E. HAMILTON, a/k/a Bone, JAMES W. BAIN, a/k/a Festus, EDWARD J. BOLEN, a/k/a Special Ed, DOMINIC R. MANGINE, MICHAEL MEDLIN, a/k/a Grandpa, MICHAEL A. SCHLICHER, a/k/a Brisco, JAMIE A. BOLINGER, a/k/a Jammer, STEPHEN M. WHITINGER, VANCE CANNER, LAWRENCE GREGORY, a/k/a Scary Larry, BRYAN E. GLAZE, a/k/a Junior, STEPHEN D. DUFF, a/k/a

Taser, RICHARD C. DeMARCO, JR., STEVE A. REYNOLDS, DAX G. SHEPHARD, and CHRISTIAN J. MILLER, a/k/a Millhouse.

## The Enterprise

The OMC, including its leadership, members, and associates constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4); that is, a group of individuals associated in fact. At all times relevant and as described in detail below, the OMC's officers, members, prospects, and probate members participated in the operation and management of the OMC's affairs. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for the purpose of achieving the objectives of the enterprise. The enterprise was engaged in, and its activities affected, interstate commerce.

## Purposes and Objects of the Enterprise

The purposes of the OMC enterprise included the following:

1. Funding the enterprise through the collection of dues from members, probates, and members of support clubs, and imposing other funding methods, including the imposition of taxes and illegal gambling activities.

2. Enriching the members and associates of the enterprise through the distribution of controlled substances, insurance fraud, extortions, and gambling activity.

3. Preserving, expanding, and protecting the power, territory, and prestige of the enterprise through the distribution of controlled substances and the use of intimidation, violence, and threats of violence, including assault, robbery, firearms violations, and extortions.

4. Keeping intended rivals and victims in fear of the enterprise and in fear of its members and associates through the use of intimidation, violence, and threats of violence.

7

**5.**     Hampering law enforcement's ability to effectively investigate the enterprise's

unlawful conduct through the obstruction of justice.

## **Means and Methods of the Enterprise**

The means and methods of the enterprise include the following:

1.     Members of the enterprise and their associates distribute controlled substances,

including cocaine and prescription drugs.

2.     Members of the enterprise and their associates engage in insurance fraud.

3.     Members of the enterprise and their associates participate in illegal gambling

activity.

4.     Members of the enterprise and their associates participate in extortions.

5.     Members of the enterprise and their associates use and threaten to use violence to

promote a climate of fear, protect and expand the enterprise's criminal operations, and

discourage members of the enterprise and other individuals from cooperating with law

enforcement.

6.     Members of the enterprise and their associates obtain, maintain, and circulate a

collection of firearms for use in their criminal activity.

7.     Members of the enterprise and their associates obstruct justice to keep themselves

out of prison and protect their ongoing criminal operations.

8.     Members of the enterprise and their associates communicate by telephone to

discuss their ongoing criminal activity.

## **The Racketeering Violation**

Beginning on or about May 1, 2009, the exact date being unknown to the Grand Jury, and

continuing through July 11, 2012, in the Southern District of Indiana, Indianapolis Division, and

elsewhere, JOSHUA N. BOWSER, MICHAEL A. KNOLL, KENT D. WHITINGER, a/k/a

Flush, MICHAEL E. HAMILTON, a/k/a Bone, JAMES W. BAIN, a/k/a Festus,

EDWARD J. BOLEN, a/k/a Special Ed, DOMINIC R. MANGINE, MICHAEL

MEDLIN, a/k/a Grandpa, MICHAEL A. SCHLICHER, a/k/a Brisco, JAMIE A. BOLINGER,

a/k/a Jammer, STEPHEN M. WHITINGER, VANCE CANNER, LAWRENCE GREGORY,

a/k/a Scary Larry, BRYAN E. GLAZE, a/k/a Junior, STEPHEN D. DUFF, a/k/a Taser,

RICHARD C. DeMARCO, JR., STEVE A. REYNOLDS, DAX G. SHEPHARD, and

CHRISTIAN J. MILLER, a/k/a Millhouse being persons employed by and associated with the

OMC, an enterprise engaged in and the activities of which affected interstate commerce, did

knowingly and unlawfully conduct and participate, directly and indirectly, in the conduct of the

affairs of the OMC enterprise through a pattern of racketeering activity within the meaning of

Title 18, United States Code, Sections 1961(1) and (5).

### The Pattern of Racketeering Activity

The pattern of racketeering activity as defined in Title 18, United States Code, Sections

1961(1) and (5) consisted of the following acts:

#### Racketeering Act 1

#### (Mail Fraud – State Farm Insurance)

From on or about March 15, 2010 through July 11, 2012, in the Southern District of

Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER, STEPHEN D. DUFF,

RICHARD C. DeMARCO, JR., MICHAEL HAMILTON, and others, having devised a scheme

and artifice to defraud State Farm Insurance and Farmers Insurance, did knowingly cause the use

of the United States Mails for the purpose of executing such scheme and artifice, as alleged in

Count Two of this Indictment, which is hereby incorporated by reference.  BOWSER, DUFF,

DeMARCO, and HAMILTON are punishable both as principals and aiders and abettors. This Act constitutes a violation of Title 18, United States Code, Sections 1341 and 2.

Racketeering Act 2

(Money Laundering – Purchase of Harley Davidson Motorcycle)

On or about May 28, 2010, in the Southern District of Indiana, Indianapolis Division, and elsewhere, RICHARD C. DeMARCO, JR., did knowingly conduct a financial transaction affecting interstate commerce which involved the proceeds of a specified unlawful activity, that is mail fraud, in violation of Title 18, United States Code, Section 1341, knowing that the transaction was designed in whole and in part to conceal and disguise the ownership and control of the proceeds of said specified unlawful activity, and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, as alleged in Count Three of this Indictment, which is hereby incorporated by reference. This Act constitutes a violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

Racketeering Act 3

(Money Laundering – Purchase of 1999 GMC Savana Van)

From on or about May 28, 2010 through March 12, 2011, in the Southern District of Indiana, Indianapolis Division, and elsewhere, KENT D. WHITINGER, a/k/a Flush, BRYAN E. GLAZE, a/k/a Junior, and RICHARD C. DeMARCO, JR., did knowingly conspire together and with other persons known and unknown to the Grand Jury to conduct a financial transaction affecting interstate commerce, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and which transactions in fact involved the proceeds of specified unlawful activity, that is mail fraud, in violation of Title 18,

10

United States Code, Section 1341, knowing that the transaction was designed in whole or in part to conceal and disguise the ownership and control of the proceeds of said specified unlawful activity, as alleged in Count Four of this Indictment, which is hereby incorporated by reference. This Act constitutes a violation of Title 18, United States Code, Section 1956(h).

### Racketeering Act 4

### (Extortionate Collection of a Loan)

From on or about February 11, 2011 through February 24, 2011, in the Southern District of Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER did knowingly conspire with Charles N. Ernstes, II, to participate in the use of extortionate means to punish a person for the non-repayment of an extension of credit, as alleged in Count Five of this Indictment, which is hereby incorporated by reference. This Act constitutes a violation of Title 18, United States Code, Section 894(a)(2).

### Racketeering Act 5

### (Distribution of Cocaine Hydrochloride)

On or about March 23, 2011, in the Southern District of Indiana, Indianapolis Division, JOSHUA N. BOWSER did knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine hydrochloride to LAWRENCE GREGORY. This Act constitutes a violation of Title 21, United States Code, Section 841(a)(1)(C).

### Racketeering Act 6

### (Illegal Gambling Business)

From on or about January 25, 2011 through May 28, 2011, in the Southern District of Indiana, Indianapolis Division, and elsewhere, MICHAEL A. KNOLL, KENT D. WHITINGER, MICHAEL E. HAMILTON, JAMES W. BAIN, EDWARD J. BOLEN, DOMINIC R.

Case 3:12-mj-07083-MKA · SPW ED · Document #70 · Filed 10/25/12 · Page 13 of 84
Case 3:12-mj-07083-MKA · SPW ED · Document #1-1 Filed 10/25/12 12 of 84 PageID #: 13
PageID #: 2051

MANGINE, MICHAEL MEDLIN, MICHAEL A. SCHLICHER, LAWRENCE GREGORY, BRYAN E. GLAZE, and STEPHEN D. DUFF did knowingly conduct, finance, manage, supervise, direct, and own all or part of an illegal gambling business, as alleged in Count Six of this Indictment, which is hereby incorporated by reference. BOWSER, KNOLL, KENT WHITINGER, HAMILTON, BAIN, BOLEN, MANGINE, MEDLIN, SCHLICHER, GREGORY, GLAZE, and DUFF are punishable both as principals and aiders and abettors. This Act constitutes a violation of Title 18, United States Code, Sections 1955 and 2.

## Racketeering Act 7

### (Conspiracy to Distribute Cocaine Hydrochloride)

From in or around June 2010 through July 11, 2012, in the Southern District of Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER, KENT D. WHITINGER, and JAMIE A. BOLINGER did knowingly and intentionally conspire together and with other persons, known and unknown to the Grand Jury, to distribute 5 kilograms of a mixture or substance containing a detectable amount of cocaine hydrochloride, as alleged in Count Sixteen of this Indictment, which is hereby incorporated by reference. This Act constitutes a violation of Title 21, United States Code, Section 846.

## Racketeering Act 8

### (Distribution of Cocaine Hydrochloride)

On or about May 26, 2011, in the Southern District of Indiana, Indianapolis Division, KENT D. WHITINGER did knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine hydrochloride, as alleged in Count Seventeen of this Indictment, which is hereby incorporated by reference. This Act constitutes a violation of Title 21, United States Code, Section 841(a)(1)(C).

Racketeering Act 9

(Distribution of Cocaine Hydrochloride)

On or about June 22, 2011, in the Southern District of Indiana, Indianapolis Division, KENT D. WHITINGER did knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine hydrochloride, as alleged in Count Eighteen of this Indictment, which is hereby incorporated by reference. This Act constitutes a violation of Title 21, United States Code, Section 841(a)(1)(C).

Racketeering Act 10

(Possession of Cocaine Hydrochloride With Intent to Distribute)

On or about July 16, 2011, in the Northern District of Indiana, DOMINIC R. MANGINE and BRYAN E. GLAZE did knowingly and intentionally possess with intent to distribute a mixture or substance containing a detectable amount of cocaine hydrochloride. MANGINE and GLAZE are punishable both as principals and aiders and abettors. This Act constitutes a violation of Title 21, United States Code, Section 841(a)(1)(C) and Title 18, United States Code, Section 2.

Racketeering Act 11

(Robbery)

On or about August 6, 2011, in the Northern District of Indiana, KENT D. WHITINGER, RICHARD C. DeMARCO, DAX G. SHEPHARD, and CHRISTIAN J. MILLER knowingly and intentionally took property from another person and from the presence of another person by using and threatening the use of force on any person. This Act constitutes a violation of Indiana Criminal Code sections 35-42-5-1(1) and 35-41-2-4.

### Racketeering Act 12

#### (Possession of Cocaine Hydrochloride With Intent to Distribute)

In or around August, 2011, in the Southern District of Indiana, Indianapolis Division, EDWARD J. BOLEN did knowingly and intentionally possess with intent to distribute a mixture or substance containing a detectable amount of cocaine hydrochloride. This Act constitutes a violation of Title 21, United States Code, Section 841(a)(1)(C).

### Racketeering Act 13

#### (Robbery)

On or about September 16, 2011, in the Southern District of Indiana, Indianapolis Division, Indiana, JOSHUA N. BOWSER, STEVE A. REYNOLDS, DAX G. SHEPHARD, and CHRISTIAN J. MILLER knowingly and intentionally took property from another person by threatening the use of force on any person. This Act constitutes a violation of Indiana Criminal Code sections 35-42-5-1(1) and 35-41-2-4.

### Racketeering Act 14

#### (Extortion – Buckets Bar and Grill)

From on or about September 30, 2011 through on or about October 6, 2011, within the Southern District of Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER and KENT D. WHITINGER did knowingly conspire to obstruct, delay, and affect commerce by extortion, as alleged in Count Seven of this Indictment, which is hereby incorporated by reference. This Act constitutes a violation of Title 18, United States Code, Section 1951.

### Racketeering Act 15

#### (Distribution of Cocaine Hydrochloride)

On or about November 4, 2011, within the Southern District of Indiana, Indianapolis Division, JOSHUA N. BOWSER, JAMIE A. BOLINGER, and others did knowingly and

14

intentionally distribute a mixture or substance containing a detectable amount of cocaine

hydrochloride, as alleged in Count Nineteen of this Indictment, which is hereby incorporated by

reference. BOWSER and BOLINGER are punishable both as principals and aiders and abettors.

This Act constitutes a violation of Title 21, United States Code, Section 841(a)(1)(C) and Title

18, United States Code, Section 2.

### Racketeering Act 16

#### (Wire Fraud – Cincinnati Insurance Company)

From on or about November 11, 2011 through July 11, 2012, in the Southern District of

Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER, JAMIE BOLINGER, and

STEPHEN WHITINGER, and others, having devised a scheme and artifice to defraud, did

knowingly cause to be transmitted by means of wire communication in interstate commerce a

writing for the purpose of executing such scheme and artifice, as alleged in Count Nine of this

Indictment, which is hereby incorporated by reference. BOWSER, BOLINGER, and

WHITINGER are punishable both as principals and aiders and abettors. This Act constitutes a

violation of Title 18, United States Code, Sections 1343 and 2.

### Racketeering Act 17

#### (Conspiracy to Distribute Morphine and Vicodin)

From on or about November 30, 2011, through July 11, 2012, in the Southern District of

Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER did knowingly and

intentionally conspire with PAMELA K. CUMMINS and other persons, known and unknown to

the Grand Jury, to distribute controlled substances (Morphine and Vicodin), as alleged in Count

Fourteen of this Indictment, which is hereby incorporated by reference. This Act constitutes a

violation of Title 21, United States Code, Section 846.

## Racketeering Act 18

### (Distribution of Cocaine Hydrochloride)

On or about December 9, 2011, in the Southern District of Indiana, Indianapolis Division, KENT D. WHITINGER did knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine hydrochloride, as alleged in Count Twenty-One of this Indictment, which is hereby incorporated by reference. This Act constitutes a violation of Title 21, United States Code, Section 841(a)(1)(C).

## Racketeering Act 19

### (Illegal Gambling Business)

From in or around September 15, 2011 through December 12, 2011, in the Southern District of Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER, MICHAEL A. KNOLL, KENT D. WHITINGER, MICHAEL E. HAMILTON, JAMES W. BAIN, EDWARD J. BOLEN, DOMINIC R. MANGINE, MICHAEL MEDLIN, MICHAEL A. SCHLICHER, JAMIE A. BOLINGER, STEPHEN M. WHITINGER, VANCE CANNER, and LAWRENCE GREGORY did knowingly conduct, finance, manage, supervise, direct, and own all or part of an illegal gambling business, as alleged in Count Eight of this Indictment, which is hereby incorporated by reference. BOWSER, KNOLL, KENT WHITINGER, HAMILTON, BAIN, BOLEN, MANGINE, MEDLIN, SCHLICHER, BOLINGER, STEPHEN WHITINGER, and CANNER are punishable both as principals and aiders and abettors. This Act constitutes a violation of Title 18, United States Code, Sections 1955 and 2.

Racketeering Act 20

(Extortionate Collection of a Loan)

From in or around December 2010 through July 11, 2012, in the Southern District of

Indiana, Indianapolis Division, JOSHUA N. BOWSER and KENT D. WHITINGER did

knowingly conspire with other individuals, known and unknown to the Grand Jury, to participate

in the use of extortionate means to collect and attempt to collect an extension of credit, as alleged

in Count Ten of this Indictment, which is hereby incorporated by reference. This Act constitutes

a violation of Title 18, United States Code, Section 894(a)(1).

Racketeering Act 21

(Unlawful Use of a Communication Facility)

On or about December 13, 2011, in the Northern District of Indiana, Indianapolis

Division, STEVE A. REYNOLDS did knowingly and intentionally use a communication facility

in facilitating the commission of an act constituting a felony under the Controlled Substances

Act; to-wit, REYNOLDS spoke to JOSHUA N. BOWSER over the telephone and agreed to

deliver prescription drugs to BOWSER. This Act constitutes a violation of Title 21, United

States Code, Section 843(b).

Racketeering Act 22

(Extortionate Collection of Credit)

From on or about January 10, 2012 through July 11, 2012, in the Southern District of

Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER, JAMIE A. BOLINGER,

VANCE CANNER, and STEVE A. REYNOLDS did knowingly conspire to participate in the

use of extortionate means to collect and attempt to collect an extension of credit, as alleged in

Count Eleven of this Indictment, which is hereby incorporated by reference. This Act constitutes a violation of Title 18, United States Code, Section 894(a)(1).

### Racketeering Act 23

### (Distribution of Cocaine Hydrochloride)

On or about January 9, 2012, in the Southern District of Indiana, Indianapolis Division, JAMIE A. BOLINGER did knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine hydrochloride, as alleged in Count Twenty-Four of this Indictment, which is hereby incorporated by reference. This Act constitutes a violation of Title 21, United States Code, Section 841(a)(1)(C).

### Racketeering Act 24

### (Tampering With a Witness)

On or about February 20, 2012, in the Southern District of Indiana, Indianapolis Division, JOSHUA N. BOWSER, KENT D. WHITINGER, a/k/a Flush, MICHAEL E. HAMILTON, a/k/a Bone, JAMES W. BAIN, a/k/a Festus, EDWARD J. BOLEN, a/k/a Special Ed, MICHAEL A. SCHLICHER, a/k/a Brisco, and JAMIE A. BOLINGER, a/k/a Jammer, did knowingly and intentionally use physical force and the threat of physical force against a person with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission of a Federal offense, as alleged in Count Twelve of this Indictment, which is hereby incorporated by reference. BOWSER, KENT WHITINGER, HAMILTON, BAIN, BOLEN, SCHLICHER, and BOLINGER are punishable both as principals and aiders and abettors. This Act constitutes a violation of Title 18, United States Code, Sections 1512(a)(2)(C) and 2.

Case 2:12-cr-00102-TWP-MJD SEALED Document 670 Filed 10/17/12 Page 29 of 84
Case 3:12-mj-07083-VKA Doc #1-1 Filed 10/25/12 19 of 84 PageID # 20
PageID #: 2058

Racketeering Act 25

(Distribution of Hydrocodone Bitartrate)

On or about February 24, 2012, in the Northern District of Indiana, STEVE A.
REYNOLDS did knowingly and intentionally distribute tablets containing hydrocodone
bitartrate, a Schedule II, Narcotic controlled substance. This Act constitutes a violation of Title
21, United States Code, Section 841(a)(1)(C).

Racketeering Act 26

(Unlawful Use of a Communication Facility)

On or about March 15, 2012, in the Northern District of Indiana, VANCE CANNER did
knowingly and intentionally use a communication facility in facilitating the commission of an act
constituting a felony under the Controlled Substances Act, as alleged in Count Forty-Two of this
Indictment, which is hereby incorporated by reference. This Act constitutes a violation of Title
21, United States Code, Section 843(b).

Racketeering Act 27

(Distribution of Methadone Hydrochloride)

On or about March 16, 2012, in the Northern District of Indiana, STEVE A. REYNOLDS
did knowingly and intentionally distribute approximately 490 tablets containing methadone
hydrochloride, a Schedule II, Narcotic controlled substance. This Act constitutes a violation of
Title 21, United States Code, Section 841(a)(1)(C).

All in violation of Title 18, United States Code, Section 1962(c).

Case: 3:12-mj-07083-VKA Doc #: 1-1 Filed: 10/25/12 20 of 84. PageID #: 21
Case 1:12-cr-00101-TWP-MJD SEALED 1 Document 670 Filed 10/17/12 Page 20 of 84
PageID #: 2059

## COUNT TWO

### [Mail Fraud – 18 U.S.C. §§ 1341; 2]

The Grand Jury further charges that:

From on or about March 15, 2010 through July 11, 2012, in the Southern District of
Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER, STEPHEN D. DUFF,
a/k/a Taser, RICHARD C. DeMARCO, JR., MICHAEL HAMILTON, a/k/a Bone, MARK A.
BISEL, a/k/a Taz, and JOSEPH ALARCON, a/k/a Spider, with the intent to defraud, devised the
below-described scheme and artifice to defraud, and did knowingly cause the use of the United
States Mails for the purpose of executing the scheme, in violation of Title 18, United States
Code, Sections 1341 and 2, as set forth more specifically below. BOWSER, DUFF, DeMARCO,
HAMILTON, BISEL, and ALARCON are punishable both as principals and aiders and abettors
pursuant to Title 18, United States Code, Section 2.

### The Scheme and Artifice to Defraud

1. Prior to March 15, 2010, BOWSER, DUFF, DeMARCO, and ALARCON entered
an agreement to stage an automobile accident to collect insurance proceeds.

2. On or about March 15, 2010, DeMARCO recruited an individual known to the
Grand Jury ("Individual #1") to participate in the staged automobile accident. Individual #1
agreed to rent a U-Haul truck and drive the U-Haul truck into the rear of a vehicle containing
BOWSER, DUFF, DeMARCO, and ALARCON. DeMARCO promised to pay $1,000 to
Individual #1 for his role in the staged automobile accident.

3. During the afternoon of March 15, 2010, Individual #1 rented a U-Haul truck
from the U-Haul rental agency located at East Street and Hanna Avenue in Indianapolis, Indiana.
After renting the U-Haul truck, Individual #1 drove to a gas station and met with BOWSER,

DUFF, DeMARCO, and ALARCON. DeMARCO instructed Individual #1 to follow their Chevrolet Avalanche in the U-Haul truck and to collide with the rear of the Chevrolet Avalanche.

4.    During the afternoon of March 15, 2010, Individual #1 intentionally drove the U-Haul truck into the rear of the Chevrolet Avalanche containing BOWSER, DUFF, DeMARCO, and ALARCON. A uniformed police officer arrived at the scene of the collision. BOWSER, DUFF, DeMARCO, and ALARCON claimed to have suffered personal injuries as a result of the collision.

5.    Following the collision, BOWSER presented both a bodily injury claim and a wage loss claim to State Farm Insurance. BOWSER identified HAMILTON as his employer and claimed approximately $12,085.46 in lost wages. Both the bodily injury claim and wage loss claim were false.

6.    HAMILTON presented false business records to State Farm Insurance to support BOWSER's false wage loss claim.

7.    BOWSER accepted $18,000 as settlement for his fraudulent wage loss and bodily injury claims. On or about July 20, 2010, BOWSER received a check for $18,000 from State Farm Insurance. BOWSER cashed the check on July 30, 2010.

8.    Following the collision, DeMARCO presented both a bodily injury claim and a wage loss claim to State Farm Insurance. DeMARCO identified BISEL as his employer and claimed approximately $15,043.50 in lost wages. Both the bodily injury claim and wage loss claim were false.

9.    BISEL presented false business records to State Farm Insurance to support DeMARCO's false wage loss claim.

21

10. DeMARCO accepted $47,000 as settlement for his fraudulent wage loss and bodily injury claims. On or about May 27, 2010, DeMARCO received checks totaling $47,000 from State Farm Insurance. DeMARCO subsequently cashed the checks.

11. Following the collision, ALARCON presented a bodily injury claim to State Farm Insurance. The bodily injury claim was false.

12. ALARCON accepted $8,000 as settlement for his bodily injury claim. On or about July 9, 2010, ALARCON received checks totaling $8,000 from State Farm Insurance. ALARCON subsequently cashed the checks.

13. Following the collision, DUFF presented a bodily injury claim to State Farm Insurance. The bodily injury claim was false. State Farm Insurance has not paid DUFF's bodily injury claim.

14. BOWSER, DUFF, DeMARCO, and ALARCON also submitted claims for reimbursement of medical expenses to Farmers Insurance, who held the automobile insurance policy for ALARCON.

### Use of the Mails

The United States Mails were used on the following occasions:

1. On or about May 3, 2010, Farmers Insurance mailed a letter to DeMARCO requesting information required to process DeMARCO's claim for reimbursement of medical expenses.

2. On or about May 3, 2010, Farmers Insurance mailed a letter to BOWSER requesting information required to process BOWSER's claim for reimbursement of medical expenses.

3. On or about May 3, 2010, Farmers Insurance mailed a letter to DUFF's counsel requesting information required to process DUFF's claim for reimbursement of medical expenses.

4. On or about May 3, 2010, Farmers Insurance mailed a letter to ALARCON requesting information required to process ALARCON's claim for reimbursement of medical expenses.

## COUNT THREE

**[Laundering of Monetary Instruments – 18 U.S.C. § 1956(a)(1)(B)(i)]**

The Grand Jury further charges that:

On or about May 28, 2010, in the Southern District of Indiana, Indianapolis Division, RICHARD C. DeMARCO, JR., knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did knowingly conduct a financial transaction affecting interstate commerce which involved the proceeds of a specified unlawful activity, that is, Title 18, United States Code, Section 1341 (mail fraud) knowing that the transaction was designed in whole and in part to conceal and disguise the ownership and control of the proceeds of the specified unlawful activity, and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; to-wit, DeMARCO paid approximately $10,000 in proceeds from the mail fraud offense detailed in Count Two of this Indictment to purchase a 2009 Harley Davidson motorcycle, bearing vehicle identification number 1HD1FV4189Y643390, and titled the motorcycle in the name of another individual to conceal and disguise the ownership and control of the motorcycle, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNT FOUR

### [Conspiracy to Launder Monetary Instruments – 18 U.S.C. § 1956(h)]

The Grand Jury further charges that:

From on or about May 28, 2010 through March 12, 2011, in the Southern District of

Indiana, Indianapolis Division, KENT D. WHITINGER, a/k/a Flush, BRYAN E. GLAZE, a/k/a

Junior, and RICHARD C. DeMARCO, JR., did knowingly conspire with each other and other

persons known and unknown to the Grand Jury to knowingly conduct a financial transaction

affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that

is mail fraud, in violation of Title 18, United States Code, Section 1341, knowing that the

transaction was designed in whole or in part to conceal and disguise the nature, location, source,

ownership and control of the proceeds of said specified unlawful activity and that while

conspiring to conduct such financial transaction, knew that the property involved in the financial

transactions represented the proceeds of some form of unlawful activity; to-wit, KENT

WHITINGER, GLAZE, and DeMARCO conspired to use proceeds from DeMARCO's

participation in the mail fraud scheme outlined in Count Two of this Indictment to purchase a

1999 GMC Savana van, which KENT WHITINGER, GLAZE, and DeMARCO agreed to falsely

title in KENT WHITINGER's name, in violation of Title 18, United States Code, Section

1956(a)(1)(B)(i).

### OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, the

members of the conspiracy did commit, among others, the following overt acts:

1.     On or about May 27, 2010, DeMARCO received approximately $47,000 in

proceeds from the insurance fraud scheme outlined in Count Two of this Indictment.

Case 3:12-mj-07083-VKA Doc # 1-1 Filed: 10/25/12 26 of 84 PageID # 27
Case 1:12-cr-00101-TWP-MJD SEALED 1 Document 670 Filed 18/17/129 Page 26 of 84
PageID #: 2065

2.      On or about June 1, 2010, DeMARCO used approximately $2,000 in proceeds from the insurance fraud scheme outlined in Count Two of this Indictment to purchase a 1999 GMC Savana van. DeMARCO and GLAZE agreed that the OMC would use the van for OMC-related purposes.

3.      On or about June 1, 2010, KENT WHITINGER, GLAZE, and DeMARCO agreed that the 1999 GMC Savana van would be purchased and titled in KENT WHITINGER's name to conceal the source of the funds and to insulate GLAZE and DeMARCO from the actual ownership of the vehicle.

4.      On or about June 1, 2010, KENT WHITINGER caused the 1999 GMC Savana van to be titled in his name.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT FIVE

### [Collection of Extensions of Credit by Extortionate Means – 18 U.S.C. § 894(a)(2)]

The Grand Jury further charges that:

From on or about February 11, 2011 through February 24, 2011, in the Southern District
of Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER and CHARLES N.
ERNSTES, II, did knowingly conspire to participate in the use of extortionate means to punish a
person for the nonrepayment of an extension of credit, in violation of Title 18, United States
Code, Section 894(a)(2); to-wit BOWSER and ERNSTES conspired to assault an individual
known to the Grand Jury ("Individual #2") after Individual #2 filed a bankruptcy petition to
discharge a $138,000 loan tendered by ERNSTES to Individual #2 as a business cash infusion.

### OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, the
members of the conspiracy did commit, among others, the following overt acts:

1.      On or about February 11, 2011, BOWSER met an individual known to the Grand
Jury ("Individual #7") at the OMC clubhouse, located at 305 Jefferson Avenue, Indianapolis,
Indiana. BOWSER provided Individual #7 with a photograph of Individual #2 and a piece of
paper bearing Individual #2's home and business address. BOWSER told Individual #7 that
Individual #2 had "crossed" one of the OMC's associates and that Individual #2's right hand
needed to be "smashed" and "roughed up."

2.      On or about February 21, 2011, BOWSER again asked Individual #7 to assault
Individual #2.

3.      On or about February 23, 2011, Individual #7 telephoned BOWSER and told
BOWSER that he had completed the assault on Individual #2.

4.   On or about February 23, 2011, ERNSTES paid BOWSER for coordinating the assault on Individual #2.  The payment occurred at the Saw Mill Saloon, located at 1313 North Sherman Drive, Indianapolis, Indiana.

All in violation of Title 18, United States Code, Section 894(a)(2).

## COUNT SIX

### [Prohibition of Illegal Gambling Businesses – 18 U.S.C. §§ 1955; 2]

The Grand Jury further charges that:

From on or about January 25, 2011 through May 28, 2011, in the Southern District of Indiana, Indianapolis Division, and elsewhere, MICHAEL A. KNOLL, KENT D. WHITINGER, a/k/a Flush, MICHAEL E. HAMILTON, a/k/a Bone, JAMES W. BAIN, a/k/a Festus, EDWARD J. BOLEN, a/k/a Special Ed, DOMINIC R. MANGINE, MICHAEL MEDLIN, a/k/a Grandpa, MICHAEL A. SCHLICHER, a/k/a Brisco, LAWRENCE GREGORY, a/k/a Scary Larry, BRIAN E. GLAZE, a/k/a Junior, and STEPHEN D. DUFF, a/k/a Taser, together and with other persons, did knowingly and intentionally conduct, finance, manage, supervise, direct, and own all or part of an illegal gambling business involving a lottery, which operated in violation of the laws of Indiana, that is:  Indiana Code Section 35-45-5-3, which involved five or more persons who conducted, financed, managed, supervised, directed, and owned all or part of such business and which remained in substantially continuous operation for a period of in excess of thirty days. KNOLL, KENT WHITINGER, HAMILTON, BAIN, BOLEN, MANGINE, MEDLINE, SCHLICHER, GREGORY, GLAZE, and DUFF are punishable both as principals and aiders and abettors pursuant to Title 18, United States Code, Section 2.

All in violation of Title 18, United States Code, Sections 1955 and 2.

## COUNT SEVEN

### [Interference With Commerce by Threats or Violence – 18 U.S.C. § 1951]

The Grand Jury further charges that:

From on or about September 30, 2011 through on or about October 6, 2011, within the Southern District of Indiana, Indianapolis Division, JOSHUA N. BOWSER and KENT D. WHITINGER, a/k/a Flush, did knowingly conspire to obstruct, delay, and affect commerce by extortion; to-wit KENT WHITINGER recruited BOWSER to extort money from the operators of Buckets Bar and Grill, located at 96th Street and Keystone Avenue in Indianapolis, for a debt that the operators of the establishment owed to KENT WHITINGER for rendering plumbing services and BOWSER proceeded to obtain both the original debt owed to KENT WHITINGER and a "collection fee" from the operators of the establishment with the victim's consent, induced by the wrongful use of threatened force, violence, and fear.

### OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, the members of the conspiracy did commit, among others, the following overt acts:

1.  Prior to September 30, 2011, KENT WHITINGER had performed plumbing services at Buckets Bar and Grill and had billed the proprietor of Buckets Bar and Grill approximately $1,100 for his services. The proprietor of Buckets Bar and Grill did not pay KENT WHITINGER for his services.

2.  On or about September 30, 2011, KENT WHITINGER asked JOSHUA BOWSER to travel to Buckets Bar and Grill and collect his debt.

3.  On or about October 1, 2011, JOSHUA BOWSER spoke on the telephone and told an employee of Buckets Bar and Grill that he needed to pay BOWSER the $1,100 owed to

Case 1:12-cr-00101-TWP-MJD SEALED Document 670 Filed 10/17/129 Page 31 of 84
PageID #: 2070

KENT WHITINGER and an additional $200 for BOWSER's debt collection activity. BOWSER

told the employee that it would become "ugly" if BOWSER needed to return to the business.

BOWSER wore clothing depicting the insignia of the Outlaws Motorcycle Club.

All in violation of Title 18, United States Code, Sections 1951 and 2.

## **COUNT EIGHT**

**[Prohibition of Illegal Gambling Businesses – 18 U.S.C. §§ 1955; 2]**

The Grand Jury further charges that:

From in or around September 15, 2011 through December 12, 2011, within the Southern District of Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER, MICHAEL A. KNOLL, KENT D. WHITINGER, a/k/a Flush, MICHAEL E. HAMILTON, a/k/a Bone, JAMES W. BAIN, a/k/a Festus, EDWARD J. BOLEN, a/k/a Special Ed, DOMINIC R. MANGINE, MICHAEL MEDLIN, a/k/a Grandpa, MICHAEL A. SCHLICHER, a/k/a Brisco, JAMIE A. BOLINGER, a/k/a Jammer, STEPHEN M. WHITINGER, VANCE CANNER, and LAWRENCE GREGORY, a/k/a Scary Larry, did together with others knowingly and intentionally conduct, finance, manage, supervise, direct, and own all or part of an illegal gambling business, that is a gambling business involving a lottery, which operated in violation of the laws of Indiana, that is: Indiana Code Section 35-45-5-3, which involved five or more persons who conducted, financed, managed, supervised, directed, and owned all or part of such business and which remained in substantially continuous operation for a period of in excess of thirty days and had a gross revenue of at least $2,000 in any single day. BOWSER, KNOLL, KENT WHITINGER, HAMILTON, BAIN, BOLEN, MANGINE, MEDLIN, SCHLICHER, BOLINGER, STEPHEN WHITINGER, CANNER, and GREGORY are punishable both as principals and aiders and abettors pursuant to Title 18, United States Code, Section 2. All in violation of Title 18, United States Code, Sections 1955 and 2.

Case 1:12-cr-00102-TWP-MJD SEALED Document 670 Filed 10/17/12 Page 33 of 84
Case 3:12-mj-07083-VKA Doc # 1-1 Filed 10/25/12 33 of 84 PageID # 34
PageID #: 2072

## COUNT NINE

### [Wire Fraud – 18 U.S.C. §§ 1343; 2]

The Grand Jury further charges that:

From on or about November 11, 2011 through July 11, 2012, in the Southern District of Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER, JAMIE A. BOLINGER, a/k/a Jammer, STEPHEN M. WHITINGER, and DAVID L. WHITINGER, with intent to defraud, devised the below-described scheme and artifice to defraud Cincinnati Insurance Company, did knowingly cause to be transmitted by means of wire communication in interstate commerce a writing for the purpose of executing the scheme, in violation of Title 18, United States Code, Sections 1343 and 2, as set forth more specifically below. BOWSER, BOLINGER, STEPHEN WHITINGER, and DAVID WHITINGER are punishable both as principals and aiders and abettors pursuant to Title 18, United States Code, Section 2.

### The Scheme and Artifice to Defraud

1.    On or before November 11, 2011, BOWSER, BOLINGER, STEPHEN WHITINGER, and DAVID WHITINGER entered into an agreement to stage a theft of DAVID WHITINGER's 2005 Dodge Ram pickup truck to collect insurance proceeds.

2.    On or about November 11, 2011, DAVID WHITINGER falsely reported to the Indianapolis Metropolitan Police Department that his 2005 Dodge Ram pickup truck, and items contained within the pickup truck, had been stolen from a parking lot at That Place Bar and Grill in Indianapolis. In fact, with DAVID WHITINGER's knowledge and consent, BOWSER and STEPHEN WHITINGER drove the Dodge Ram pickup truck to another location.

3.      Shortly after taking possession of the vehicle, BOWSER and STEPHEN WHITINGER drove the Dodge Ram pickup truck to BOLINGER's residence, located at 4673 Cramer Road, Martinsville, Indiana, for storage.

4.      BOLINGER agreed to assist the insurance fraud by maintaining the 2005 Dodge Ram pickup truck at his residence.

5.      On or about November 14, 2011, DAVID WHITINGER presented a claim to his insurance company, Cincinnati Insurance Company, alleging that someone had stolen his 2005 Dodge Ram pickup truck.

6.      On or about November 28, 2011, the Cincinnati Insurance Company honored DAVID WHITINGER's claim and paid DAVID WHITINGER a draft in the amount of $25,430 to settle the claim.

7.      On or about February 7, 2012, BOLINGER and STEPHEN WHITINGER transported the 2005 Dodge Ram pickup truck from 4673 Cramer Road, Martinsville, to a location in Indianapolis to conceal the 2005 Dodge Ram pickup truck from law enforcement officers and private investigators.

<u>Use of the Wires</u>

The following writing was transmitted in interstate commerce:

1.      On November 29, 2011, the Cincinnati Insurance Company faxed a vehicle theft affidavit signed by DAVID WHITINGER from their office in the state of Indiana to Cincinnati, Ohio on behalf of DAVID WHITINGER's claim.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TEN

**[Collection of Extensions of Credit by Extortionate Means – 18 U.S.C. § 894(a)(1)]**

The Grand Jury further charges that:

From in or around December 2010 through July 11, 2012, in the Southern District of Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER, KENT D. WHITINGER, a/k/a Flush, JOSEPH MAIO, RONALD P. TAYLOR, JR., and TOMMY SIMS did knowingly conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit, in violation of Title 18, United States Code, Section 894(a)(1); to-wit BOWSER, KENT WHITINGER, MAIO, TAYLOR, and SIMS conspired to threaten to assault an individual known to the Grand Jury ("Individual #3") after MAIO had loaned money to Individual #3 and Individual #3 had not repaid the loan.

### OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, the members of the conspiracy did commit, among others, the following overt acts:

1.      In or around late December 2010, BOWSER and KENT WHITINGER met Individual #3 at a Waffle House restaurant located in Indianapolis, Indiana. BOWSER and KENT WHITINGER, who were wearing clothing bearing the insignia of the OMC, told Individual #3 that they would collect the debt that Individual #3 owed to MAIO. BOWSER told Individual #3 that he would inflict harm upon Individual #3 if he did not repay the debt that Individual #3 owed to MAIO.

2.      On October 21, 2011, at the direction of BOWSER, SIMS confronted Individual #3 near the Hanna's Wrecker Service business, located at 3501 West Kelly Street, Indianapolis, Indiana and told Individual #3 to give him money to pay down the debt that Individual #3 owed

to MAIO. When Individual #3 did not produce any money, SIMS instructed Individual #3 to remove Individual #3's shoes. Individual #3 complied and gave his shoes to SIMS. SIMS displayed a firearm during the confrontation.

    3.    On or about December 9, 2011, MAIO told BOWSER that he had obtained information about Individual #3's whereabouts so that BOWSER could pressure Individual #3 to pay Individual #3's existing debt to MAIO.

    4.    On or about December 26, 2011, BOWSER agreed to refrain from engaging in violence against Individual #3, provided that Individual #3 make regular payments to MAIO on Individual #3's outstanding debt.

    5.    On or about December 26, 2011, TAYLOR contacted another individual to obtain information about Individual #3's whereabouts, so that BOWSER could locate Individual #3 and apply pressure to Individual #3 to make payments on Individual #3's debt to MAIO.

    6.    On or about December 26, 2011, BOWSER traveled to OTB Indianapolis Downtown, located at 110 West Washington Street, Indianapolis to locate Individual #3 and apply pressure on Individual #3 to make payments to MAIO.

    7.    On or about January 4, 2012, MAIO paid BOWSER approximately $100 from the money collected from Individual #3 so that BOWSER could post bond and free himself from jail.

    All in violation of Title 18, United States Code, Section 894(a)(1).

## COUNT ELEVEN

**[Collection of Extensions of Credit by Extortionate Means – 18 U.S.C. § 894(a)(1)]**

The Grand Jury further charges that:

From on or about January 10, 2012 through July 11, 2012, in the Southern District of Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER, JAMIE A. BOLINGER, a/k/a Jammer, VANCE CANNER, and STEVE A. REYNOLDS did knowingly conspire to participate in the use of extortionate means to collect and attempt to collect an extension of credit, in violation of Title 18, United States Code, Section 894(a)(1); to-wit BOWSER, BOLINGER, CANNER, and REYNOLDS conspired to threaten to assault an undercover agent to collect an extension of credit that had purportedly been extended to the undercover agent by another individual.

### OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, the members of the conspiracy did commit, among others, the following overt acts:

1. On or about January 6, 2012, BOWSER agreed to collect money for a debt purportedly owed to Individual #6's associate.

2. On or about January 10, 2012, BOWSER and REYNOLDS met Individual #6 in the parking lot of the Spiece Fieldhouse in Fort Wayne, Indiana. BOWSER identified himself as a "collection agent" and stated that Individual #6 owed a "buddy" of BOWSER's for a car that Individual #6 bought in Indianapolis. BOWSER added, "You better start paying. This is your last warning. Next time we see you, it'll be ugly." REYNOLDS also instructed Individual #6 that Individual #6 needed to pay the money. BOWSER and REYNOLDS both wore clothing bearing the insignia of the OMC during the encounter.

37

3. On or about January 20, 2012, BOWSER met Individual #6 at Patty's Sugar Shack restaurant, located at 5560 Brookville Road, Indianapolis, Indiana. BOWSER collected approximately $800 from Individual #6 for the purported debt. At the time of the transaction, BOWSER told Individual #6 that Individual #6 needed to continue to make payments to BOWSER and if "you fuck up, I will come find you." BOWSER also stated that he could find Individual #6 anywhere, stating that the OMC had chapters everywhere, even Japan. BOWSER also stated that he makes people "disappear" if they "fuck up."

4. On or about January 30, 2012, BOWSER and BOLINGER met Individual #6 at the Bloodmoney Tattoo Parlor, located at 1645 Wells Street North, Fort Wayne, Indiana. BOWSER and BOLINGER collected approximately $400 from Individual #6 for the purported debt. BOWSER and BOLINGER both wore clothing bearing the insignia of the OMC during the encounter.

5. On or about February 9, 2012, BOWSER and CANNER met Individual #6 at Patty's Sugar Shack restaurant, located at 5560 Brookville Road, Indianapolis, Indiana. BOWSER and CANNER collected approximately $500 from Individual #6 for the purported debt. After the transaction, CANNER told Individual #6 that it was a good thing that Individual #6 paid the money, or CANNER and BOWSER would have broken Individual #6's fingers.

6. On or about February 27, 2012, BOWSER and BOLINGER met Individual #6 at the OMC's clubhouse in Fort Wayne, located at 1202 West Main Street, Fort Wayne, Indiana. BOWSER and BOLINGER collected approximately $500 from Individual #6 for the purported debt.

All in violation of Title 18, United States Code, Section 894(a)(1).

## COUNT TWELVE

### [Tampering With a Witness – 18 U.S.C. §§ 1512(a)(2)(C); 2]

The Grand Jury further charges that:

On or about February 20, 2012, in the Southern District of Indiana, Indianapolis Division, JOSHUA N. BOWSER, KENT D. WHITINGER, a/k/a Flush, MICHAEL E. HAMILTON, a/k/a Bone, JAMES W. BAIN, a/k/a Festus, EDWARD J. BOLEN, a/k/a Special Ed, MICHAEL A. SCHLICHER, a/k/a Brisco, and JAMIE A. BOLINGER, a/k/a Jammer, did knowingly and intentionally use physical force against a person with intent to prevent the communication to a law enforcement officer of the United States of information relating to the commission of a Federal offense; to-wit, BOWSER, KENT WHITINGER, HAMILTON, BAIN, BOLEN, SCHLICHER, and BOLINGER did assault an individual known to the Grand Jury ("Individual #5") with intent to prevent Individual #5 from communicating information to law enforcement officers of the United States concerning ongoing cocaine trafficking activity involving members of the Outlaw Motorcycle Club and their associates. BOWSER, KENT WHITINGER, HAMILTON, BAIN, BOLEN, SCHLICHER, and BOLINGER are punishable both as principals and aiders and abettors pursuant to Title 18, United States Code, Section 2.

All in violation of Title 18, United States Code, Sections 1512(a)(2)(C) and 2.

Case 3:12-mj-07083-VMS-SEALED Doc #: 1-1 Filed: 10/25/12 40 of 84 PageID #: 41
Case 3:12-mj-07083-WMS SEALED Document 070 F40 of 84 Page 40 of 84
PageID #: 2079

## COUNT THIRTEEN

### [Bankruptcy Fraud – 18 U.S.C. § 152(1)]

The Grand Jury further charges that:

From on or about February 22, 2012, through the date of this Indictment, within the Southern District of Indiana, Indianapolis Division, JAMIE A. BOLINGER, a/k/a Jammer, and SCHARME L. BOLINGER did knowingly and fraudulently conceal from creditors and the United States Trustee property belonging to the estate of a debtor in connection with a cause under Title 11, United States Code; to-wit JAMIE BOLINGER and SCHARME BOLINGER concealed approximately $8,500 in their possession from creditors and the United States Trustee incident to filing a bankruptcy petition on or about March 15, 2012, in violation of Title 18, United States Code, Section 152(1).

## COUNT FOURTEEN

### [Conspiracy to Distribute Morphine and Vicodin – 21 U.S.C. § 846]

The Grand Jury further charges that:

From on or about November 30, 2011, through July 11, 2012, within the Southern

District of Indiana, Indianapolis Division, and elsewhere, JOSHUA N. BOWSER and PAMELA

K. CUMMINS did knowingly and intentionally conspire together and with other persons, known

and unknown to the Grand Jury, to distribute controlled substances; to-wit, Morphine, a Schedule

II, Narcotic controlled substance, and Vicodin, a Schedule III, Narcotic controlled substance, in

violation of Title 21, United States Code, Section 841(a)(1).

### MANNER AND MEANS

1.      PAMELA CUMMINS ("CUMMINS"), an employee of the Indiana University

Medical Center, obtained prescription drugs (including Vicodin and Morphine) for JOSHUA

BOWSER ("BOWSER") pursuant to medical prescriptions, knowing that BOWSER intended to

distribute some of the prescription drugs to other individuals.

2.      BOWSER obtained the prescription drugs and distributed some of the prescription

drugs to other individuals.

### OVERT ACTS

1.      On December 2, 2011, CUMMINS told BOWSER that she would attempt to

obtain a refill from a physician for his Vicodin and Morphine tablets.

2.      On December 2, 2011, CUMMINS obtained a prescription for BOWSER for 48

Vicodin tablets and arranged for the prescriptions to be filled at the Low Cost pharmacy store.

3.    On December 12, 2011, CUMMINS agreed to come to the OMC clubhouse to deliver prescription drugs to BOWSER for redistribution to RONALD P. TAYLOR, JR. TAYLOR collected money to pay CUMMINS for the prescription drugs.

4.    On December 15, 2011, BOWSER contacted CUMMINS to obtain prescription drugs.

All in violation of Title 21, United States Code, Section 846.

## COUNT FIFTEEN

### [Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]

The Grand Jury further charges that:

On or about December 12, 2012, within the Southern District of Indiana, Indianapolis Division, PAMELA K. CUMMINS did knowingly and intentionally use a communication facility in facilitating the commission of an act constituting a felony under the Controlled Substances Act; to-wit, CUMMINS communicated with JOSHUA N. BOWSER via cellular telephone and advised BOWSER that she would cause Morphine, a Schedule II , Narcotic controlled substance, to be distributed to BOWSER, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 843(b).

Case 3:12-mj-07083-MKA Doc #: 1-1 Filed: 10/25/12 44 of 84 PageID #: 45
Case 1:12-cr-00101-TWP-MJD SEALED Document 670 Filed 18/17/39 Page 45 of 84
PageID #: 2083

## COUNT SIXTEEN

### [Conspiracy to Distribute Cocaine Hydrochloride – 21 U.S.C. § 846]

The Grand Jury further charges that:

From in or around June 2010 through July 11, 2012, in the Southern District of Indiana, Indianapolis Division, and elsewhere, JOSE DIAZ, RIGO ROCHA-LOPEZ, JUSTO ROJAS, CARLOS MENA, a/k/a Charlie, HECTOR NAVA-ARREDONDO, a/k/a Oscar, JORGE DANIEL LEDEZMA-CRUZ, a/k/a Daniel, JORGE SEDENO-CALLEJAS, CESAR GRANADOS, JAMES A. STONEBRAKER, a/k/a Stoney, JOSHUA N. BOWSER, KENT D. WHITINGER, a/k/a Flush, JAMIE A. BOLINGER, a/k/a Jammer, BRIAN T. PEACOCK, ABRAHAM FLORES, a/k/a Abraham Medina, THOMAS A. GRIFFIN, JR., a/k/a Little Tony, and FRANK JORDAN did knowingly and intentionally conspire together and with other persons, known and unknown to the Grand Jury, to distribute 5 kilograms of a mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

### MANNER AND MEANS

1.     HECTOR NAVA-ARREDONDO ("NAVA"), a resident of Indianapolis, Indiana, received cocaine hydrochloride from various sources in the Indianapolis area.

2.     NAVA'S cocaine hydrochloride sources included JOSE DIAZ ("DIAZ") and CARLOS MENA, a/k/a Charlie ("MENA").

3.     JUSTO ROJAS ("ROJAS") supplied DIAZ and RIGO ROCHA LOPEZ ("ROCHA") with cocaine hydrochloride.

4.     JORGE DANIEL LEDEZMA-CRUZ ("LEDEZMA") served as a drug runner for NAVA and distributed cocaine to other individuals at NAVA's direction.

44

5.     CESAR GRANADOS ("GRANADOS") concealed drug proceeds for NAVA at his residence.

6.     NAVA delivered cocaine to JAMES STONEBRAKER ("STONEBRAKER"), Anthony Leach, William Anderson, Terrell Adams, ABRAHAM FLORES, ("FLORES"), ANTHONY GRIFFIN, JR. ("LITTLE TONY"), FRANK JORDAN and other individuals for redistribution.  NAVA distributed a portion of his cocaine from the Sidewinders Bar and Grill, located at 1847 South State Avenue, Indianapolis, Indiana.

7.     STONEBRAKER delivered cocaine hydrochloride to JOSHUA BOWSER, KENT WHITINGER, JAMIE BOLINGER, and others for redistribution.

8.     JAMIE BOLINGER delivered cocaine hydrochloride to BRIAN PEACOCK for redistribution.

9.     FLORES distributed cocaine hydrochloride to his customers at the Sidewinders Bar and Grill.

## OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, that is to distribute cocaine hydrochloride, the members of the conspiracy did commit, among others, the following overt acts:

1.     On or about May 26, 2011, KENT WHITINGER delivered cocaine hydrochloride to an individual known to the Grand Jury ("Individual #6") at a residence located at 6315 Massachusetts Avenue, Indianapolis, Indiana.

2.     On or about June 22, 2011, KENT WHITINGER delivered cocaine hydrochloride to Individual #6 at the OMC "bunker house," located at 2204 East New York Street, Indianapolis, Indiana.

Case 1:12-cr-09101-TWP-MJD - SEALED - Document 570-2 Filed 18-17-29 Page 46 of 84
Case 3:12-mj-07083-VKA Doc # 1-1 Filed 10/25/12 46 of 84 PageID # 47
PageID #: 2085

3.      On or about November 4, 2011, STONEBRAKER procured a quantity of cocaine hydrochloride and transported it to the OMC clubhouse, located at 305 Jefferson Avenue, Indianapolis, Indiana. STONEBRAKER met BOWSER, BOLINGER, and Individual #6 at the OMC clubhouse and delivered the cocaine hydrochloride to BOWSER. BOWSER, in turn, delivered the cocaine hydrochloride to Individual #6 at the OMC clubhouse.

4.      On or about December 7, 2011, STONEBRAKER delivered cocaine hydrochloride to KENT WHITINGER at a residence located at 218 West Southern Avenue, Indianapolis, Indiana.

5.      On or about December 9, 2011, KENT WHITINGER delivered cocaine hydrochloride to Individual #6 at the OMC clubhouse, located at 305 Jefferson Avenue, Indianapolis, Indiana.

6.      On or about January 9, 2012, NAVA delivered cocaine hydrochloride to STONEBRAKER outside of the residence located at 218 West Southern Avenue, Indianapolis, Indiana. On or about January 9, 2012, STONEBRAKER delivered the cocaine hydrochloride that he had received from NAVA to BOLINGER inside the residence located at 218 West Southern Avenue. On or about January 9, 2012, BOLINGER transported the cocaine hydrochloride that he had received from STONEBRAKER to a parking lot located at 1110 West Thompson Road, Indianapolis, and delivered the cocaine hydrochloride to PEACOCK at the parking lot. PEACOCK left the parking lot located at 1110 West Thompson Road with the cocaine hydrochloride and drove northbound on Interstate 65 to attempt to deliver the cocaine hydrochloride to his customers. PEACOCK possessed two firearms while transporting the cocaine hydrochloride.

Case 3:12-mj-07083-VKA Doc #: 1-1 Filed: 10/25/12 47 of 84. PageID #: 48
Case 2:12-cr-04101-TWP-WGH SEALED Document #: 570-1 Filed: 18/17/29 Page 49 of 84
PageID #: 2086

7.     On or about February 23, 2012, DIAZ delivered approximately one-half kilogram of cocaine hydrochloride to NAVA at the Indiana Discount Mall, located at 3585 Commercial Drive, Indianapolis, Indiana.

8.     On or about February 23, 2012, NAVA delivered cocaine hydrochloride to FLORES for redistribution.

9.     On February 29, 2012, NAVA delivered cocaine hydrochloride to LITTLE TONY for redistribution.

10.     On or about March 2, 2012, NAVA directed LEDEZMA to deliver two ounces of cocaine hydrochloride to STONEBRAKER.  LEDEZMA transported the cocaine hydrochloride from a residence located at 441 North Gray Street, Indianapolis, Indiana, to the Gem City Tire store, located at 6315 Brookville Road, Indianapolis, Indiana, and delivered the cocaine hydrochloride to STONEBRAKER for redistribution.

11.     On or about March 16, 2012, MENA advised NAVA by telephone that he would deliver approximately one-half kilogram of cocaine hydrochloride to NAVA.  After talking to MENA, NAVA contacted GRANADOS and asked GRANADOS to procure currency that GRANADOS had concealed for NAVA so that NAVA could purchase the cocaine hydrochloride from MENA.  GRANADOS located the currency and delivered it to NAVA.  NAVA transported the money to MENA's location and purchased approximately one-half kilogram of cocaine for redistribution.

12.     During March 2012, ROJAS delivered cocaine hydrochloride to DIAZ and ROCHA.

13.     On or about April 7, 2012, NAVA delivered cocaine hydrochloride to JORDAN for redistribution.

14. On or about April 23, 2012, NAVA possessed cocaine hydrochloride inside of a vehicle near 1200 East Pleasant Run Parkway North Drive, Indianapolis, Indiana.

15. On or about April 23, 2012, NAVA, LEDEZMA, and SEDENO possessed in excess of 800 grams of cocaine hydrochloride, inositol, and approximately $8,000 in currency at a residence located at 441 North Gray Street, Indianapolis, Indiana.

16. On or about April 25, 2012, DIAZ paid ROJAS for cocaine hydrochloride that ROJAS had previously fronted to DIAZ and ROCHA.

17. On or about April 25, 2012, ROJAS possessed cocaine hydrochloride and approximately $883 in currency inside of a 2002 Chevrolet Trailblazer in Indianapolis, Indiana. ROJAS possessed an additional quantity of cocaine hydrochloride and approximately $3,000 in currency at a residence located at 2725 Dawson Street, Indianapolis, Indiana.

18. On or about April 27, 2012, ROCHA delivered cocaine hydrochloride to a confidential informant and an undercover police officer at a parking lot outside of the PT's Showclub, located at 7916 Pendleton Pike, Indianapolis, Indiana.

19. On or about May 4, 2012, ROCHA delivered cocaine hydrochloride to a confidential informant and an undercover police officer at a residence located at a parking lot outside of the Lowe's Home Improvement store, located at 8801 East 25th Street, Indianapolis, Indiana.

20. On or about June 4, 2012, ROCHA possessed approximately five ounces of cocaine and a loaded .40 caliber Taurus semi-automatic handgun inside of a blue Dodge Charger parked in the Spanish Oaks apartment complex in Indianapolis, Indiana.

All in violation of Title 21, United States Code, Section 846.

## COUNT SEVENTEEN

**[Distribution of Cocaine Hydrochloride – 21 U.S.C. § 841(a)(1)(C)]**

The Grand Jury further charges that:

On or about May 26, 2011, in the Southern District of Indiana, Indianapolis Division,

KENT D. WHITINGER, a/k/a Flush, did knowingly and intentionally distribute a mixture or

substance containing a detectable amount of cocaine hydrochloride, a Schedule II, Narcotic

controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)(C).

## COUNT EIGHTEEN

### [Distribution of Cocaine Hydrochloride – 21 U.S.C. § 841(a)(1)(C)]

The Grand Jury further charges that:

On or about June 22, 2011, in the Southern District of Indiana, Indianapolis Division,

KENT D. WHITINGER, a/k/a Flush, did knowingly and intentionally distribute a mixture or

substance containing a detectable amount of cocaine hydrochloride, a Schedule II, Narcotic

controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)(C).

## COUNT NINETEEN

**[Distribution of Cocaine Hydrochloride – 21 U.S.C. § 841(a)(1)(C) and 18 U.S.C. § 2]**

The Grand Jury further charges that:

On or about November 4, 2011, within the Southern District of Indiana, Indianapolis Division, JOSHUA N. BOWSER, JAMIE A. BOLINGER, a/k/a Jammer, and JAMES A. STONEBRAKER, a/k/a Stoney, did knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)(C). BOWSER and BOLINGER are punishable both as principals and aiders and abettors pursuant to Title 18, United States Code, Section 2.

## COUNT TWENTY

**[Distribution of Cocaine Hydrochloride – 21 U.S.C. § 841(a)(1)(C)]**

The Grand Jury further charges that:

On or about December 7, 2011, within the Southern District of Indiana, Indianapolis

Division, JAMES A. STONEBRAKER, a/k/a Stoney, did knowingly and intentionally distribute

a mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II,

Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)(C).

## COUNT TWENTY-ONE

### [Distribution of Cocaine Hydrochloride – 21 U.S.C. § 841(a)(1)(C)]

The Grand Jury further charges that:

On or about December 9, 2011, within the Southern District of Indiana, Indianapolis

Division, KENT D. WHITINGER, a/k/a Flush, did knowingly and intentionally distribute a

mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II,

Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)(C).

## COUNT TWENTY-TWO

**[Distribution of Cocaine Hydrochloride – 21 U.S.C. § 841(a)(1)(C)]**

The Grand Jury further charges that:

On or about January 9, 2012, within the Southern District of Indiana, Indianapolis

Division, HECTOR NAVA-ARREDONDO, a/k/a Oscar, did knowingly and intentionally

distribute a mixture or substance containing a detectable amount of cocaine hydrochloride, a

Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section

841(a)(1)(C).

## COUNT TWENTY-THREE

**[Distribution of Cocaine Hydrochloride – 21 U.S.C. § 841(a)(1)(C)]**

The Grand Jury further charges that:

On or about January 9, 2012, within the Southern District of Indiana, Indianapolis

Division, JAMES A. STONEBRAKER, a/k/a Stoney, did knowingly and intentionally distribute

a mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II,

Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)(C).

Case 3:12-mj-07083-VMS *SEALED* Doc #: 1-1 Filed: 10/25/12 56 of 84. PageID #: 57
Case 2:12-cr-00101-TWP-MJD SEALED Document 70-2 Filed 10/17/12 Page 56 of 84
PageID #: 2095

## COUNT TWENTY-FOUR

### [Distribution of Cocaine Hydrochloride – 21 U.S.C. § 841(a)(1)(C)]

The Grand Jury further charges that:

On or about January 9, 2012, within the Southern District of Indiana, Indianapolis
Division, JAMIE A. BOLINGER, a/k/a Jammer, did knowingly and intentionally distribute a
mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II,
Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)(C).

## COUNT TWENTY-FIVE

**[Possession of Cocaine Hydrochloride With Intent to Distribute – 21 U.S.C. § 841(a)(1)(C)]**

The Grand Jury further charges that:

On or about January 9, 2012, within the Southern District of Indiana, Indianapolis Division, BRIAN T. PEACOCK, did knowingly and intentionally possess with intent to distribute a mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)(C).

## COUNT TWENTY-SIX

**[Possession of Firearm in Furtherance of a Drug Trafficking Crime – 18 U.S.C. § 924(c)]**

The Grand Jury further charges that:

On or about January 9, 2012, within the Southern District of Indiana, Indianapolis Division, BRIAN T. PEACOCK, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, possessed a firearm; to-wit, PEACOCK possessed a .38 caliber Smith & Wesson revolver bearing serial number CHF1165 and a .38 caliber Omega derringer handgun bearing serial number 35241 in furtherance of the offense described in Count Twenty-Five of the Indictment, in violation of Title 18, United States Code, Section 924(c).

## COUNT TWENTY-SEVEN

### [Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]

The Grand Jury further charges that:

On or about December 1, 2011, within the Southern District of Indiana, Indianapolis Division, NORVEL TERRY, a/k/a Nasty, did knowingly and intentionally use a communication facility in facilitating the commission of an act constituting a felony under the Controlled Substances Act; to-wit, TERRY communicated with JOSHUA N. BOWSER via cellular telephone and advised BOWSER that he would contact another individual to facilitate the delivery of cocaine hydrochloride, a Schedule II, Narcotic controlled substance, to BOWSER, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 843(b).

# COUNT TWENTY-EIGHT

COUNT OMITTED

## COUNT TWENTY-NINE

### [Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]

The Grand Jury further charges that:

On or about March 2, 2012, within the Southern District of Indiana, Indianapolis Division, STEPHEN LECCLIER, a/k/a Snoopy, did knowingly and intentionally use a communication facility in facilitating the commission of an act constituting a felony under the Controlled Substances Act; to-wit, LECCLIER communicated with JOSHUA N. BOWSER via cellular telephone and agreed to deliver to BOWSER a quantity of tablets containing hydrocodone, a Schedule III, Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 843(b).

Case 3:12-mj-07083-VKA Doc # 1-1 Filed: 10/25/12 62 of 84 PageID # 63
Case 1:12-cr-00101-TWP-MJD SEALED Document 670 Filed 18/17/29 Page 62 of 84
PageID #: 2101

## COUNT THIRTY

### [Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]

The Grand Jury further charges that:

On or about March 15, 2012, within the Southern District of Indiana, Indianapolis

Division, RUSSELL PRYOR, a/k/a Gabby, did knowingly and intentionally use a

communication facility in facilitating the commission of an act constituting a felony under the

Controlled Substances Act; to-wit, PRYOR communicated with JAMIE A. BOLINGER, a/k/a

Jammer and agreed to deliver to BOLINGER a quantity of pills containing hydrocodone

bitartrate, a Schedule III, Narcotic controlled substance, in violation of Title 21, United States

Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 843(b).

Case 3:12-mj-07083-VKA Doc # 1-1 Filed: 10/25/12 63 of 84. PageID #: 64
Case 1:12-cr-00101-TWP-MJD SEALED Document 670 Filed 10/17/12 Page 63 of 84
PageID #: 2102

## COUNT THIRTY-ONE

### [Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]

The Grand Jury further charges that:

On or about March 17, 2012, within the Southern District of Indiana, Indianapolis

Division, ANTHONY LEACH did knowingly and intentionally use a communication facility in

facilitating the commission of an act constituting a felony under the Controlled Substances Act;

to-wit, LEACH communicated with HECTOR NAVA-ARREDONDO via cellular telephone and

asked NAVA to deliver to him for redistribution two ounces of cocaine hydrochloride, a

Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section

841(a)(1).

All in violation of Title 21, United States Code, Section 843(b).

Case 3:12-mj-07083-VKA Doc # 1-1 Filed: 10/25/12 64 of 84. PageID # 65
Case 2:12-cr-34101-TWP-MOB SEALED Document 570 Filed 18/17/29 Page 65 of 84
PageID #: 2103

## COUNT THIRTY-TWO

### [Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]

The Grand Jury further charges that:

On or about March 23, 2012, within the Southern District of Indiana, Indianapolis Division, WILLIAM ANDERSON did knowingly and intentionally use a communication facility in facilitating the commission of an act constituting a felony under the Controlled Substances Act; to-wit, ANDERSON communicated with HECTOR NAVA-ARREDONDO via cellular telephone and asked NAVA to deliver to him for redistribution a quantity of cocaine hydrochloride, a Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 843(b).

## COUNT THIRTY-THREE

### [Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]

The Grand Jury further charges that:

On or about April 1, 2012, within the Southern District of Indiana, Indianapolis Division, TERRELL ADAMS did knowingly and intentionally use a communication facility in facilitating the commission of an act constituting a felony under the Controlled Substances Act; to-wit, ADAMS communicated with HECTOR NAVA-ARREDONDO via cellular telephone and asked NAVA to deliver to him for redistribution one ounce of cocaine hydrochloride, a Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 843(b).

Case 3:12-mj-07083-VKA SEALED Doc #: 1-1 Filed: 10/25/12 66 of 84 PageID #: 67
Case 2:12-cr-00101-WOB-MJS Document #: 1-1 Filed: 10/25/12 Page 66 of 84
PageID #: 2105

## COUNT THIRTY-FOUR

**[Distribution of Cocaine Hydrochloride – 21 U.S.C. § 841(a)(1)(C)]**

The Grand Jury further charges that:

On or about April 27, 2012, within the Southern District of Indiana, Indianapolis Division, RIGO ROCHA-LOPEZ, did knowingly and intentionally distribute a mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)(C).

## COUNT THIRTY-FIVE

### [Distribution of Cocaine Hydrochloride – 21 U.S.C. § 841(a)(1)(C)]

The Grand Jury further charges that:

On or about May 4, 2012, within the Southern District of Indiana, Indianapolis Division,

RIGO ROCHA-LOPEZ, did knowingly and intentionally distribute a mixture or substance

containing a detectable amount of cocaine hydrochloride, a Schedule II, Narcotic controlled

substance, in violation of Title 21, United States Code, Section 841(a)(1)(C).

## COUNT THIRTY-SIX

**[Possession of Cocaine Hydrochloride With Intent to Distribute – 21 U.S.C. § 841(a)(1)(C)]**

The Grand Jury further charges that:

On or about June 4, 2012, within the Southern District of Indiana, Indianapolis Division,

RIGO ROCHA-LOPEZ, did knowingly and intentionally possess with intent to distribute a

mixture or substance containing a detectable amount of cocaine hydrochloride, a Schedule II,

Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)(C).

## COUNT THIRTY-SEVEN

**[Possession of Firearm in Furtherance of a Drug Trafficking Crime – 18 U.S.C. § 924(c)]**

The Grand Jury further charges that:

On or about June 4, 2012, within the Southern District of Indiana, Indianapolis Division, RIGO ROCHA-LOPEZ, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, possessed a firearm; to-wit, ROCHA-LOPEZ possessed a .40 caliber Taurus semi-automatic handgun bearing serial number SCN02158 in furtherance of the offense described in Count Thirty-Six of the Indictment, in violation of Title 18, United States Code, Section 924(c).

## COUNT THIRTY-EIGHT

### [Maintaining Drug Involved Premises – 21 U.S.C. § 856(a)(2)]

The Grand Jury further charges that:

From in or around June 2010 through July 11, 2012, in the Southern District of Indiana, Indianapolis Division, and elsewhere, THOMAS A. GRIFFIN, SR., a/k/a Tony, did manage and control any place as an owner and occupant, and made available for use, with or without compensation, the place for the purpose of unlawfully distributing a controlled substance; to-wit, THOMAS A. GRIFFIN, SR. managed and controlled Sidewinders Bar, located at 1847 South State Avenue, Indianapolis, Indiana, as an owner and occupant and made Sidewinders Bar available for the purpose of distributing cocaine hydrochloride, a Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section 856(a)(2).

## COUNT THIRTY-NINE

### [Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]

The Grand Jury further charges that:

On or about February 23, 2012, within the Southern District of Indiana, Indianapolis Division, ABRAHAM FLORES, a/k/a Abraham Medina, did knowingly and intentionally use a communication facility in facilitating the commission of an act constituting a felony under the Controlled Substances Act; to-wit, FLORES communicated with HECTOR NAVA-ARREDONDO via cellular telephone and asked NAVA to deliver to him for redistribution cocaine hydrochloride, a Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 843(b).

Case 3:12-mj-07083-MKA SEALED Document #70 Filed 10/17/12 Page 73 of 84
Case 3:12-mj-07083-MKA Doc #: 1-1 Filed: 10/25/12 72 of 84 PageID #: 73
PageID #: 2111

## COUNT FORTY

### [Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]

The Grand Jury further charges that:

On or about February 29, 2012, within the Southern District of Indiana, Indianapolis Division, THOMAS A. GRIFFIN, JR., a/k/a Little Tony, did knowingly and intentionally use a communication facility in facilitating the commission of an act constituting a felony under the Controlled Substances Act; to-wit, GRIFFIN communicated with HECTOR NAVA-ARREDONDO via cellular telephone and asked NAVA to deliver to him for redistribution cocaine hydrochloride, a Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 843(b).

Case 3:12-mj-07083-MKA Doc #: 1-1 Filed: 10/25/12 Page 73 of 84 PageID #: 74

## COUNT FORTY-ONE

### [Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]

The Grand Jury further charges that:

On or about April 7, 2012, within the Southern District of Indiana, Indianapolis Division,

FRANK JORDAN did knowingly and intentionally use a communication facility in facilitating

the commission of an act constituting a felony under the Controlled Substances Act; to-wit,

JORDAN communicated with HECTOR NAVA-ARREDONDO via cellular telephone and

asked NAVA to deliver to him for redistribution cocaine hydrochloride, a Schedule II, Narcotic

controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 843(b).

## COUNT FORTY-TWO

### [Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]

The Grand Jury further charges that:

On or about March 15, 2012, in the Southern District of Indiana, Indianapolis Division,

VANCE CANNER did knowingly and intentionally use a communication facility in facilitating

the commission of an act constituting a felony under the Controlled Substances Act; to-wit,

CANNER spoke to JAMES STONEBRAKER over the telephone and asked STONEBRAKER

for cocaine hydrochloride for distribution.  This Act constitutes a violation of Title 21, United

States Code, Section 843(b).

All in violation of Title 21, United States Code, Section 843(b).

## COUNT FORTY-THREE

### [Conspiracy to Distribute Cocaine Hydrochloride – 21 U.S.C. § 846]

The Grand Jury further charges that:

From in or around October 25, 2011 through July 11, 2012, in the Southern District of

Indiana, Indianapolis Division, and elsewhere, ROBERT ROBERTS and THOMAS SWAN,

a/k/a T.J., did knowingly and intentionally conspire together and with other persons, known and

unknown to the Grand Jury, to distribute a mixture or substance containing a detectable amount

of cocaine hydrochloride, a Schedule II, Narcotic controlled substance, in violation of Title 21,

United States Code, Section 841(a)(1).

### MANNER AND MEANS

1.      ROBERT ROBERTS ("ROBERTS"), a resident of Indianapolis, Indiana,

received cocaine hydrochloride for distribution in the Indianapolis area.

2.      ROBERTS distributed cocaine hydrochloride to THOMAS SWAN ("SWAN")

and an individual known to the Grand Jury ("Individual #8") for redistribution.

3.      SWAN and Individual #8 distributed the cocaine hydrochloride at Club Paradise,

located at 5255 English Avenue.

### OVERT ACTS

In furtherance of the conspiracy and to accomplish the object of the conspiracy, that is to

distribute cocaine hydrochloride, the members of the conspiracy did commit, among others, the

following overt acts:

1.      On or about October 25, 2011, ROBERTS possessed cocaine, digital scales, and

approximately $80,524 in United States currency at 1127 South Chester Avenue, Indianapolis,

Indiana.

Case 3:12-mj-07083-MKA Doc #: 1-1 Filed: 10/25/12 76 of 84 PageID #: 77
Case 3:12-mj-07083-MKA SEALED Document 1 Filed 10/25/12 76 of 84 Page 76 of 84
PageID #: 2115

2.      On or about January 20, 2012, SWAN delivered cocaine to JOSHUA N.

BOWSER in Indianapolis, Indiana.

All in violation of Title 21, United States Code, Section 846.

### COUNT FORTY-FOUR

**[Unlawful Use of Communication Facility – 21 U.S.C. § 843(b)]**

The Grand Jury further charges that:

On or about January 20, 2012, within the Southern District of Indiana, Indianapolis Division, THOMAS SWAN, a/k/a T.J., did knowingly and intentionally use a communication facility in facilitating the commission of an act constituting a felony under the Controlled Substances Act; to-wit, SWAN communicated with JOSHUA N. BOWSER via cellular telephone and advised BOWSER that he would deliver him cocaine hydrochloride, a Schedule II, Narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 843(b).

## COUNT FORTY-FIVE

### [Felon in Possession of Firearm – 18 U.S.C. § 922(g)(1)]

The Grand Jury further charges that:

On or about July 11, 2012, within the Southern District of Indiana, Indianapolis Division, ROBERT MUEHLHAUSEN, a/k/a Mule, having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess a firearm, which firearm had been shipped or transported in interstate commerce; to-wit, MUEHLHAUSEN possessed a Mossberg 30-30 rifle, bearing serial number 1381913, a Remington 30-06 Model 742 rifle, bearing serial number B7009605, a Smith & Wesson .38 Special revolver, bearing serial number D554538, a Colt .45 caliber pistol, bearing serial number 11682813, a Walther P22 pistol, bearing serial number L069248, a Davis Industries P380 firearm, bearing serial number AP231612, a 12 gauge shotgun, bearing serial number 17758, a Superior Arms 5.56 millimeter rifle, bearing serial number 11116, a Ruger Mini-14 .223 caliber firearm, bearing serial number 180-59974, a Chote Tool Corporation .30 caliber rifle, bearing serial number 7875, a Springfield .30 caliber M1 rifle, bearing serial number 512188, a Marlin 30-30 caliber rifle, bearing serial number 23138423, and a Browning 12 gauge shotgun, bearing serial number 20362, after sustaining a felony conviction for Larceny From a Person, a Felony, in Mason County, Michigan, on or about February 11, 1986.

All in violation of Title 18, United States Code, Section 922(g)(1).

Case 3:12-mj-07083-VKA Doc #: 1-1 Filed: 10/25/12 79 of 84 PageID #: 80
Case 1:12-cr-00101-TWP-MJD SEALED Document 670 Filed 18/17/29 Page 79 of 84
PageID #: 2118

## COUNT FORTY-SIX

### [Drug User in Possession of Firearm – 18 U.S.C. § 922(g)(3)]

The Grand Jury further charges that:

On or about July 11, 2012, within the Southern District of Indiana, Indianapolis Division,

MICHAEL E. HAMILTON, a/k/a Bone, a person who is an unlawful user of a controlled

substance, did knowingly possess a firearm, which firearm had been shipped or transported in

interstate commerce; to-wit, HAMILTON, a user of marijuana, possessed a Winchester 1300

shotgun, bearing serial number L2394484, a Ruger 1022 rifle, bearing serial number 230-73494,

a Frontier derringer, bearing serial number 9631, and a Springfield 1911A1 firearm, bearing

serial number WW100816.

All in violation of Title 18, United States Code, Section 922(g)(3).

## FORFEITURE - COUNT ONE

The allegations contained in Count One of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 1963, and Title 28, United States Code, Section 2461(c).

1.    Pursuant to Rule 32.2(a), Fed. R. Crim. P., the defendants, JOSHUA N. BOWSER, MICHAEL A. KNOLL, KENT D. WHITINGER, a/k/a Flush, MICHAEL E. HAMILTON, a/k/a Bone, JAMES W. BAIN, a/k/a Festus, EDWARD J. BOLEN, a/k/a Special Ed, DOMINIC R. MANGINE, MICHAEL MEDLIN, a/k/a Grandpa, MICHAEL A. SCHLICHER, a/k/a Brisco, JAMIE A. BOLINGER, a/k/a Jammer, STEPHEN M. WHITINGER, VANCE CANNER, LAWRENCE GREGORY, a/k/a Scary Larry, BRYAN E. GLAZE, a/k/a Junior, STEPHEN D. DUFF, a/k/a Taser, RICHARD C. DeMARCO, JR., and STEVE A. REYNOLDS are hereby notified that, upon conviction of the violation of Title 18, United States Code, Section 1962(c), as charged in Count One of this Indictment, the defendants shall forfeit, pursuant to Title 18, United States Code, Section 1963:

a.    all interests acquired and maintained in violation of Title 18, United States Code, Section 1962;

b.    all interests in, securities of, claims against, and property and contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

        c.     all property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

    2.    The property subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), includes, but is not limited to, the following assets:

        a.     Real property located at 305 Jefferson Avenue, Indianapolis, Indiana and

        b.     Real property located at 2204 East New York Street, Indianapolis, Indiana.

    3.    Pursuant to Title 18, United States Code, Section 1963(m) and Title 21, United States Code, Section 853(p), as incorporated by 28 U.S.C. § 2461(c), the defendants shall forfeit substitute property up to the value of the property described in the previous paragraph if that property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of this Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty.

## FORFEITURE – COUNT TWO

1.      The allegations in Counts Sixteen through Twenty-Six, Thirty-Four through
Thirty-Six, Thirty-Eight, and Forty-Three of this indictment are realleged as if fully set forth
here, for the purpose of giving the defendants notice of the United States' intent to seek
forfeiture pursuant to Title 21, United States Code, Section 853, Title 18, United States Code,
Section 924, and Title 28, United States Code, Section 2461.

2.      If convicted of the offenses set forth in Counts Sixteen through Twenty-Six,
Thirty-Four through Thirty-Six, Thirty-Eight, and Forty-Three of this indictment, JOSE DIAZ,
RIGO ROCHA-LOPEZ, JUSTO ROJAS, CARLOS MENA, a/k/a Charlie, HECTOR NAVA-
ARREDONDO, a/k/a Oscar, JORGE DANIEL LEDEZMA-CRUZ, a/k/a Daniel, JORGE
SEDENO-CALLEJAS, CESAR GRANADOS, JAMES A. STONEBRAKER, a/k/a Stoney,
JOSHUA N. BOWSER, KENT D. WHITINGER, a/k/a Flush, JAMIE A. BOLINGER, a/k/a
Jammer, BRIAN T. PEACOCK, ABRAHAM FLORES, a/k/a Abraham Medina, THOMAS A.
GRIFFIN, JR., a/k/a Little Tony, and FRANK JORDAN, and THOMAS A. GRIFFIN, SR., a/k/a
Tony, defendants herein, shall forfeit to the United States any and all property constituting or
derived from any proceeds the defendants obtained directly or indirectly as a result of the
offenses of which he or she is convicted, and any and all property used or intended to be used in
any manner or part to commit and to facilitate the commission of the offenses of which he or she
is convicted.  Such property includes, but is not necessarily limited to, the following:

a.      Real property located at 1705 and 1709 East Naomi Street and 1947 South
State Street, Indianapolis, Indiana; and

b.      Indiana Liquor Permit Numbers RR4906124 and GR4927749.

82

3. Pursuant to Title 21, United States Code, Section 853(p), the court shall order the forfeiture of any other property of the defendants, up to the value of any property described in paragraph 2, if, by any act or omission of the defendants, the property described in paragraph 2, or any portion thereof:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty.

In keeping with the foregoing, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of all forfeitable property as described above in Paragraph 2.

4. If convicted of the offenses set forth in Counts Sixteen through Twenty-Six, Thirty-Four through Thirty-Six, Thirty-Eight, and Forty-Three of this indictment, JOSE DIAZ, RIGO ROCHA-LOPEZ, JUSTO ROJAS, CARLOS MENA, a/k/a Charlie, HECTOR NAVA-ARREDONDO, a/k/a Oscar, JORGE DANIEL LEDEZMA-CRUZ, a/k/a Daniel, JORGE SEDENO-CALLEJAS, CESAR GRANADOS, JAMES A. STONEBRAKER, a/k/a Stoney, JOSHUA N. BOWSER, KENT D. WHITINGER, a/k/a Flush, JAMIE A. BOLINGER, a/k/a

Jammer, BRIAN T. PEACOCK, ABRAHAM FLORES, THOMAS A. GRIFFIN, JR., a/k/a

Little Tony, and FRANK JORDAN, and THOMAS A. GRIFFIN, SR., a/k/a Tony, defendants

herein, shall also forfeit to the United States, pursuant to Title 18, United States Code, Section

924(d) and Title 28, United States Code, Section 2461(c), any firearm or ammunition involved in

or used in any of the offenses of which he or she is convicted.

     5.    The above-named defendant[s] are jointly and severably liable for the forfeiture

allegations alleged above.

A TRUE BILL:

FOREPERSON

JOSEPH H. HOGSETT
United States Attorney

By:

Bradley A. Blackington
Assistant United States Attorney